SIGNED this 21st day of February, 2014

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

## IN THE UNITED STATES BANKRUPTCY COURT FOR
## THE EASTERN DISTRICT OF TENNESSEE
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **In re** | ) | |
| | ) | |
| **Steve A. McKenzie** | ) | **No. 08-16378** |
| | ) | **Chapter 7** |
| **Debtor** | ) | |
| _____ | ) | |
| | ) | |
| **C. Kenneth Still, Trustee** | ) | |
| | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Adv. No. 12-1081** |
| | ) | |
| **Nelson Bowers II** | ) | |
| **Exit 20 Auto Mall LLC** | ) | |
| | ) | |
| **Defendants** | ) | |

## M E M O R A N D U M

This adversary proceeding is before the court on the Motion for Summary Judgment filed

by the defendants on January 17, 2014. The complaint initiating this proceeding seeks to avoid a

-1-

transfer of the debtor's interest in a limited liability company to defendant Nelson Bowers II as a fraudulent conveyance and as an unauthorized postpetition transfer. The defendants' motion seeks summary judgment on two primary grounds: (1) that this proceeding is barred by the statute of limitations because equitable tolling is inapplicable as a matter of law; and (2) that the plaintiff cannot prove that the alleged transfer was actually and effectively made. On February 7, 2014, the plaintiff filed a response in opposition to the motion.

## I.

The record reveals the following undisputed facts. On November 20, 2008, an involuntary chapter 7 petition was filed against the debtor, Steve A. McKenzie. On December 20, 2008, the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 16, 2009, the court entered an order for relief in the involuntary case with the debtor's consent, and that order also converted the chapter 7 case to a case under chapter 11 of the Code and consolidated the two cases. On June 14, 2010, the consolidated case was converted to chapter 7.

At the time the involuntary petition was filed, the debtor and Mr. Bowers each owned a 50% membership interest in Cleveland Auto Mall, LLC. Cleveland Auto Mall owned certain real property located along I-75 in Bradley County, Tennessee, but, on December 10, 2008, after the filing of the involuntary petition but before the filing of the voluntary petition and the entry of the order for relief in the involuntary case, the debtor signed a Sale and Purchase Agreement and a Warranty Deed for the sale and transfer of the real estate to defendant Exit 20 Auto Mall, LLC.

On August 5, 2010, the plaintiff filed a complaint initiating Adversary Proceeding No. 10-1407 against the defendants, their attorneys, and CapitalMark Bank & Trust, seeking to avoid the transfer of the real property. On December 16, 2010, the court dismissed the complaint on the

-2-

ground that the complaint sought to avoid the transfer of real estate that was not property of the

debtor or his bankruptcy estate. The plaintiff did not file a notice of appeal of the order of dis-

missal.

During argument on the motion to dismiss the prior adversary proceeding, attorney Ri-

chard Banks, one of the attorneys for the plaintiff at that time, made a statement that the debtor's

equity interest in Cleveland Auto Mall was "sold after notice to creditors." There was not, in

fact, any notice to creditors of a sale of the debtor's equity interest in Cleveland Auto Mall.

On October 10, 2010, prior to the dismissal of Adversary Proceeding No. 10-1407 on

December 16, 2010, the attorney for Mr. Bowers sent the plaintiff's attorney an email, which

reads, in pertinent part:

> Regarding the consideration given by Exit 20 Auto Mall, LLC for the 41 acres
> acquired on 12/10/2008, from Cleveland Auto Mall, LLC . . . , it consisted of the
> following:
>
>> 1. Assumption of existing debt of approximately $3.8 million owed to
>> SunTrust Bank;
>>
>> 2. Assumption of debt due on the development of access road of approxi-
>> mately $250,000;
>>
>> 3. Assumption of debt owed for construction of the gas line of approxi-
>> mately $187,000;
>>
>> 4. Assumption by purchaser of all real estate taxes;
>>
>> 5. Complete release by SunTrust of Toby McKenzie's guaranty of the
>> outstanding loan; and
>>
>> 6. Payment of $75,000 to Shasta Kaye McKenzie[1] for the benefit of
>> Cleveland Auto Mall. . . .

---

[1] Shasta McKenzie is the debtor's daughter.

It would be the contention of Nelson Bowers and Exit 20 Auto Mall, LLC that adequate consideration in the aggregate amount of at least $4,312,000 was provided for the transfer of the subject property.

The plaintiff contends that he first became aware of the transfer of the debtor's membership interest in Cleveland Auto Mall on July 8, 2011, when Mr. Bowers testified that that interest was purchased with the $75,000 check to Shasta McKenzie that was mentioned in the email quoted above. That testimony was as follows:

Q      In your mind the $75,000 that was made payable to Shasta McKenzie was for Steve A. McKenzie, correct?

A      Correct.

Q      And that was a payment to him for his agreement to allow Cleveland Auto Mall, LLC to convey its property to Exit 20 Auto Mall, LLC?

A      Yes, sir.

. . . .

Q      Okay. In the questioning and answering that's been done over the exhibits that have been introduced, the Warranty Deed, the Sale and Purchase Agreement and the check, there were a lot of things that you answered you didn't remember or you didn't know. Is there anything that you can think of that would refresh your recollection about the answers to the questions I've given you?

A      This particular check was for his interest in the LLC, not for the property.

There were no follow-up questions regarding this testimony, or its apparent inconsistency with the prior testimony that the payment was made in exchange for the debtor's agreement to allow Cleveland Auto Mall to convey the real property. The $75,000 check dated December 9, 2008, was paid from the account of Steve Dillard and Ann T. Dillard.

On August 15, 2011, the defendants' attorney took a Rule 2004 examination of the plaintiff's attorney in connection with the prior adversary proceeding. At that time, Mr. Banks testi-

-4-

fied that he and the plaintiff had "certainly talked about . . . Mr. McKenzie's ownership interest

in Cleveland Auto Mall and how that interest was transferred with documents drafted by your

office for 75,000.00." It is not clear when that conversation took place, what prompted that con-

versation, or the content of that conversation.

On December 16, 2011, the plaintiff filed a motion for relief from the order dismissing

Adversary Proceeding No. 10-1407 under Fed. R. Bankr. P. 9024 and Fed. R. Civ. P. 60(b). The

court denied the motion on October 3, 2012. One of the issues addressed by the court in denying

the motion concerned certain allegations set forth in the dismissed complaint. Those allegations

were as follows:

> 22. On December 10, 2008 this fraudulent and avoidable transfer of McKenzie's
> equitable interest in the sixty (60) acres of Exit 20 property was prohibited by the
> automatic stay imposed as of November 20, 2008. . . .
>
> . . . .
>
> 31. McKenzie's 50% share in Cleveland Auto Mall, LLC and that entity's sole
> asset of 60 acres of valuable land amount to "property of the Estate" as described
> under 11 U.S.C. § 541.
>
> 32. The property was transferred as defined under 11 U.S.C. 101(54)(D).

In denying the motion for relief from the order dismissing the proceeding, the court explained:

> When the court dismissed the complaint, the court made clear that it con-
> strued the complaint as seeking to avoid a transfer of real property made by a non-
> debtor entity. While Paragraphs 31 and 32 of the original complaint possibly
> could be read as seeking the avoidance of the transfer of the debtor's membership
> interest in Cleveland Auto Mall, LLC, the other allegations of the complaint made
> clear that the plaintiff was seeking to avoid the transfer of the real property by the
> limited liability company, and not the transfer of the debtor's membership interest
> in the LLC. As the court noted in an order entered in this proceeding on January
> 10, 2012, Paragraphs 31 and 32 appeared to represent "inartful drafting by con-
> fusing ownership of the LLC with ownership of the real property – a distinction
> upon which the court based its decision dismissing this proceeding." Moreover,
> the parties do not question the correctness of the dismissal order or the court's

interpretation of the complaint. At the pretrial conference on August 1, 2012, the defendants' counsel apparently agreed that Paragraphs 31 and 32 represented in-artful drafting and that the original complaint did not seek to avoid the transfer of the debtor's LLC interest. The plaintiff implicitly makes the same acknowledg-ment, since he contends that, through no fault of his own, he did not know about the transfer at the time the proceeding was dismissed.

Another issue that the court addressed in denying the motion for relief from the order of dismissal was the possible application of *res judicata* in a subsequent proceeding to avoid an alleged transfer of the debtor's equity interest in Cleveland Auto Mall. In addressing that issue the court stated:

> The plaintiff is concerned that the defendants may contend in the new law-suit that the second proceeding is barred by *res judicata*, which bars a subsequent action between the same parties or their privies that seeks to enforce the plain-tiff's "remedies against the defendant with respect to all or any part of the trans-action, or series of connected transactions, out of which the action arose." Re-statement (Second) of Judgments § 24(1). The transfer that the original complaint sought to avoid and the transfer that the plaintiff's proposed amended complaint would seek to avoid are different transactions, and the court views them as differ-ent claims. *See* 18A Charles Alan Wright, *et al.*, *Federal Practice and Procedure* § 4439 (2d ed. 2011), which states that "[t]he claim preclusion consequences of dismissal for failure to state a claim are limited to the claim advanced in the first action. A second action on a different claim is not precluded." While this court sees the claims as different, and while this court does not believe that *res judicata* should bar the second complaint since this court's December 2010 order was only intended to apply to the claim alleged, namely a transfer by a nondebtor party of real estate that was not estate property, it may well be that the *res judicata* issue can only be decided in the new lawsuit. However, even if that were so, and even if it could be argued that *res judicata* might otherwise apply since the two transfers could arguably be viewed as parts of a "series of connected transactions," com-ment j to the Restatement section states in part:

>> A defendant cannot justly object to being sued on a part or phase of a claim that the plaintiff failed to include in an earlier ac-tion because of the defendant's own fraud . . . .

>> The result is the same when the defendant was not fraudu-lent, but by an innocent misrepresentation prevented the plaintiff from including the entire claim in the original action.

The Restatement comment was followed in *McCarty v. First of Georgia Insurance Co.,* 713 F.2d 609 (10th Cir. 1983), in which the court held that a tort claim may redress the same wrong as a previously dismissed contract claim because the defendant's "wrongful concealment prevented [the plaintiffs] from asserting their tort claim in the first action," *id.* at 612-13 (citing *Christian v. American Home Assurance Co.,* 577 P.2d 899, 905 (Okla. 1977)), and the Sixth Circuit followed *McCarty* in *Browning v. Levy,* 283 F.3d 761, 769-70 (6th Cir. 2002). Thus, the very same kinds of considerations that might allow equitable tolling as an exception to the statute of limitations would render *res judicata* inapplicable if indeed it might otherwise apply.

The plaintiff filed the complaint initiating this adversary proceeding on August 28, 2012. The complaint asserts that the debtor's equity interest was transferred to Exit 20 around the time of the sale of the real property, and it is this transfer that the plaintiff now seeks to avoid under the provisions of §§ 544 and 549 of the Bankruptcy Code. Although the complaint was filed beyond the limitations periods set forth in §§ 546(a) and 549(d) of the Bankruptcy Code, which expired in December 2010, the plaintiff relies on equitable tolling or equitable estoppel in arguing that he should not be barred from pursuing the avoidance claim.

Other undisputed facts that the defendants cite in support of their contention that a transfer of the debtor's membership interest in Cleveland Auto Mall did not occur are the following:

The Operating Agreement of Cleveland Auto Mall, LLC, provides that no transfer or pledge of a membership interest can be made without the approval of the other holders of membership interests. No approval of the debtor's transfer of his equity interest in Cleveland Auto Mall was provided at the time of the alleged transfer.

Cleveland Auto Mall's 2008 federal income tax return (dated September 11, 2009) includes a Schedule K-1 indicating that the debtor was still a 50% member. An unsigned copy of that return was attached to the defendants' motion for summary judgment, and the return designates Mr. Bowers as the "tax matters partner."

On April 9, 2009, the plaintiff's accountant filed a request for an extension with the Tennessee Department of Revenue that alleged that the debtor was a member of Cleveland Auto Mall.

Finally, the court takes judicial notice that, on January 26, 2009, the debtor filed his bankruptcy schedules under oath and he reported in Schedule B - Personal Property that he held an ownership interest  in "Cleveland Auto Mall" valued at $1,926,106.

## II.

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Bankr. P. 7056; Fed. R. Civ. P. 56(a). All reasonable inferences are drawn in favor of the non-moving party. *Waeschle v. Dragovic*, 576 F.3d 539, 543 (6th Cir. 2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). Where the evidence would permit a reasonable jury to return a verdict for the non-moving party, a genuine issue of material fact exists and summary judgment must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

In the face of a summary judgment motion, the nonmoving party may not rest on its pleadings, but must come forward with some probative evidence to support its claim. *Celotex v. Catrett*, 477 U.S. 317, 325 (1986); *60 Ivy St. Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir. 1987) (holding that nonmoving party must present "some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial"). In the words of Rule 56(c)(1) of the Federal Rules of Civil Procedure, "[a] party asserting that a fact . . . is genuinely disputed must support the assertion by . . . citing to particular parts of materials in the

-8-

record . . . or . . . showing that the materials cited do not establish the absence . . . of a genuine

dispute, or that an adverse party cannot produce admissible evidence to support the fact."

## III.

The threshold issue of fact in this proceeding is whether the debtor transferred his equity

interest, or membership interest, in Cleveland Auto Mall, LLC, to either of the defendants prior

to, or contemporaneously with the transfer of the real estate from Cleveland Auto Mall to Exit 20

Auto Mall. If so, the transfer would have been a transfer of property of the debtor's bankruptcy

estate that may be subject to avoidance by the trustee. 11 U.S.C. §§ 549, 544.

The defendants correctly argue that all of the documentary evidence in this proceeding

appears to support a conclusion that no transfer of the membership interest occurred: neither the

Warranty Deed nor the Sale and Purchase Agreement executed in connection with the real prop-

erty conveyance (both of which were signed by the debtor on behalf of Cleveland Auto Mall)

provides for or contemplates a transfer of the debtor's equity interest in the LLC; there was no

written approval of a transfer of the debtor's equity interest in Cleveland Auto Mall as required

by its operating agreement; and the 2008 federal income tax return of Cleveland Auto Mall dated

September 11, 2009 indicates that the debtor was still a 50% member. Moreover, the debtor

stated in his verified schedules dated January 26, 2009, that he owned an equity interest in

Cleveland Auto Mall valued at $1,926,106.

That is not to say, however, that there is no evidence that such a transfer occurred. De-

fendant Nelson Bowers volunteered in a deposition in July 2011 that the $75,000 check made

payable to Shasta McKenzie was actually a payment for the debtor's interest in Cleveland Auto

Mall, LLC, specifically stating that the check was not payment for the real estate that the com-

pany sold to Exit 20 Auto Mall. Although counsel for the defendants argued in his brief that Mr.

Bowers was simply confused at his deposition, the defendants did not submit an affidavit from

Mr. Bowers that addressed or explained his deposition statement. Thus, the court concludes that

there clearly exists a genuine issue of material fact as to whether the debtor's membership inter-

est was transferred as Mr. Bowers testified.

## IV.

Because it is undisputed that this proceeding was not initiated within the applicable limi-

tations periods prescribed by 11 U.S.C. §§ 549(d) and 546(a), the plaintiff contends that equita-

ble tolling and equitable estoppel bar the defendants from relying on a limitations defense.

"Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a

claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations

period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (internal

quotation mark omitted) (citation omitted). "Generally, a litigant seeking equitable tolling bears

the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and

(2) that some extraordinary circumstances stood in his way." *Credit Suisse Sec. (USA) LLC v.*

*Simmonds*, 132 S. Ct. 1414, 1419 (2012) (emphasis omitted) (internal quotation marks omitted)

(quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Such "extraordinary circumstances"

may exist, for example, where the existence of the cause of action was concealed from the plain-

tiff:

> In order to establish equitable tolling by the doctrine of fraudulent con-
> cealment, the plaintiffs must allege and establish that: 1) defendants concealed the
> conduct that constitutes the cause of action; 2) defendants' concealment prevented
> plaintiffs from discovering the cause of action within the limitations period; and
> 3) until discovery, plaintiffs exercised due diligence in trying to find out about the
> cause of action.

*Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 422 (6th Cir. 2009); *see also In re McKenzie*,

Ch. 7 Case No. 08-16378, 2011 WL 6140516, at *30-*34 (Bankr. E.D. Tenn. Dec. 9, 2011),

*aff'd*, Nos. 1:11-cv-192, 1:11-cv-274, 1:12-cv-025, 2012 WL 4742708 (E.D. Tenn. Oct. 2, 2012),

*aff'd*, 737 F.3d 1034 (6th Cir. 2013). The *Egerer* opinion also explained the difference between

equitable tolling and equitable estoppel:

> Unlike equitable tolling, which requires concealment of plaintiffs' cause of action, equitable estoppel applies when plaintiffs are aware of their claims but defendants' conduct prevents plaintiffs from timely filing suit. When this occurs, defendants are estopped from asserting the statute of limitations as a bar to plaintiffs' lawsuit.
>
> . . . .
>
> Like equitable tolling, equitable estoppel requires affirmative steps or action on the part of a defendant. Plaintiffs must have reasonably relied on defendants' affirmative conduct in failing to file suit within the statute of limitations. Also, like equitable tolling, plaintiffs invoking equitable estoppel must establish due diligence.

*Egerer*, 556 F.3d at 424-25. Although the plaintiff relies on both doctrines, it is apparent that

only equitable tolling could apply to this proceeding, because the plaintiff contends that he was

not aware of the causes of action – not that he was aware of the claims but that some conduct of

the defendants prevented him from asserting them.

Drawing all reasonable inferences in favor of the plaintiff, it appears from the evidence

submitted in support of the motion for summary judgment that the defendants may have con-

cealed the alleged transaction involving the debtor's transfer of his equity interest in Cleveland

Auto Mall. While the documentary evidence before the court suggests that there was no transfer

of the membership interest, that same evidence suggests a concealment of the transaction if it did

take place. Assuming the truth of Mr. Bowers's testimony that the $75,000 check was for the

debtor's membership interest in Cleveland Auto Mall and not for the real estate, then one must question why there was no documentation of the sale – unless that was because the parties wished to keep it secret. There was a Sales and Purchase Agreement for the real estate, but not for a transfer of the membership interest. Also, the consideration for the membership interest was paid by a check made payable to Shasta McKenzie rather than the debtor, and was drawn on an account of Steve and Ann Dillard rather than either of the defendants, leading to suspicion that the parties to the transaction wanted to conceal the transfer. Moreover, the debtor continued this pattern by stating in his schedules, filed six weeks after the alleged transfer, that he owned an equity interest in Cleveland Auto Mall valued at $1,926,106. Mr. Bowers may have further concealed the transaction by causing Cleveland Auto Mall, of which he was the "tax matters partner," to file a federal income tax return nine months later that indicated that the debtor was still a 50% member.[2]

The only document executed in connection with the alleged transfer of the debtor's equity interest in Cleveland Auto Mall is the $75,000 check. Of course, an examination of that check does not reveal its purpose. The only document that *does* shed some light on the purpose of the $75,000 check was the October 2010 email from Mr. Bowers's attorney to counsel for the plaintiff, which listed the check as part of the consideration for the real estate transfer. By the time the limitations periods expired in December 2010, the plaintiff may have lacked any knowledge that the debtor had transferred his equity interest contemporaneously with the LLC's transfer of the

---

[2] The defendants also point out that, four months after the alleged transfer, the plaintiff's accountant filed a request for an extension with the Tennessee Department of Revenue that alleged that the debtor was a member of Cleveland Auto Mall. However, this filing has no significance because the plaintiff contends he did not know about the transfer of the membership interest until the Bowers deposition in July 2011.

real property, considering that the parties to the transfer had chosen not to document the transac-

tion and further considering that the attorney's email buttressed the assumption that no such

transfer had taken place.

In the latter regard, the defendants contend that the plaintiff failed to act diligently in

investigating whether the equity interest had been transferred, even though there are no docu-

ments suggesting that such a transfer might have occurred. Richard Banks, one of the debtor's

attorneys, did argue at the hearing on the motion to dismiss Adversary Proceeding No. 10-1407

that the debtor's equity interest in Cleveland Auto Mall was "sold after notice to creditors," but

that statement was obviously incorrect and its meaning unclear. Also, Mr. Banks testified during

a Rule 2004 examination in August 2011 that he and the plaintiff had talked about the debtor's

ownership interest in Cleveland Auto Mall and how that interest was transferred for $75,000. It

is not clear, however, when that conversation took place: if it occurred after Mr. Bowers's July

2011 deposition, the conversation would not indicate an awareness of the transfer at the time the

limitations periods expired in December 2010.

Drawing all reasonable inferences from the evidence in favor of the plaintiff for purposes

of the summary judgment motion filed against him, the court cannot conclude at this stage in the

proceeding that there are no genuine issues of material fact with respect to whether equitable

tolling should bar the defendants' statute of limitations defense as a matter of law. Accordingly,

the court will deny summary judgment on this issue.

## V.

There are two other secondary issues raised in the brief supporting the defendants' mo-

tion. First, they argue that, because there was no written approval of the transfer of the debtor's

-13-

equity interest in Cleveland Auto Mall as required by its operating agreement, an effective transfer could not have occurred. The simple answer to this argument is that restrictions on transferability of LLC membership interests, being contractual provisions, may be waived by the members. *See In re McKenzie*, Ch. 7 Case No. 08-16378, 2011 WL 6140516, at *19 (Bankr. E.D. Tenn. Dec. 9, 2011), *aff'd*, Nos. 1:11-cv-192, 1:11-cv-274, 1:12-cv-025, 2012 WL 4742708 (E.D. Tenn. Oct. 2, 2012), *aff'd*, 737 F.3d 1034 (6th Cir. 2013). Because the alleged transfer of the membership interest was between the debtor and Mr. Bowers (or an entity he owns or controls) and because they were the sole members of the LLC, it could be inferred that the members waived the requirement of written consent.

Second, the defendants argue that, because the earlier adversary proceeding brought by the plaintiff against the defendants and others was dismissed, *res judicata* bars this litigation. The court rejects this argument for the reasons stated in its oral opinion denying the plaintiff's motion for relief from the order dismissing that earlier proceeding, quoted above.

## VI.

For the foregoing reasons, the court will enter an order denying the defendants' motion for summary judgment. Among the facts to be determined at trial are (1) whether a transfer of the plaintiff's equity interest in Cleveland Auto Mall occurred, (2) if a transfer occurred, when it occurred, (3) if a transfer occurred, to whom it was made,[3] (4) whether the defendants concealed the alleged transaction from the plaintiff and creditors of the debtor's bankruptcy estate, and (5) whether the plaintiff exercised due diligence in trying to find out about the causes of action

---

[3] The complaint alleges that the transfer was made to Mr. Bowers, but the plaintiff's joinder of Exit 20 Auto Mall as a defendant suggests some possibility that that entity was the recipient of the transfer.

that form the subject matter of this adversary proceeding, including whether the plaintiff knew or

had reason to know of the transfer despite any concealment by the plaintiffs.

# # #