SIGNED this 16th day of May, 2014

_____
John C. Cook
**UNITED STATES BANKRUPTCY JUDGE**

_____

### IN THE UNITED STATES BANKRUPTCY COURT FOR
### THE EASTERN DISTRICT OF TENNESSEE
### SOUTHERN DIVISION

| | | |
|---|---|---|
| In re | ) | |
| | ) | |
| Steve A. McKenzie | ) | No. 08-16378 |
| | ) | Chapter 7 |
| Debtor | ) | |
| _____ | ) | |
| | ) | |
| C. Kenneth Still, Trustee | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Adv. No. 12-1081 |
| | ) | |
| Nelson Bowers II | ) | |
| | ) | |
| Defendant | ) | |

### M E M O R A N D U M

The plaintiff in this adversary proceeding, C. Kenneth Still as trustee for the bankruptcy

estate of debtor Steve A. McKenzie, seeks to avoid, pursuant to 11 U.S.C. § 549, an alleged

transfer by the debtor to the defendant, Nelson Bowers II,[1] of the debtor's membership interest in a limited liability company. The defendant argues that the plaintiff's action is barred by the statute of limitations and denies that a transfer of the membership interest occurred. Having considered the evidence presented at the trial of all issues except the value of the property transferred[2] and the arguments and briefs of the parties, the court now makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure, as made applicable in bankruptcy adversary proceedings by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

## I.

On November 20, 2008, an involuntary chapter 7 petition was filed against the debtor. On December 20, 2008, the debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code. On January 16, 2009, the court entered an order for relief in the involuntary case with the debtor's consent, and that order also converted the chapter 7 case to a case under chapter 11 of the Code and consolidated the two cases.

At the time the involuntary petition was filed, Cleveland Auto Mall, LLC, was owned by the debtor and Mr. Bowers, each of whom held a 50% membership interest in the entity. Also at that time, the only asset owned by Cleveland Auto Mall was certain real property located near Exit 20 from I-75 in Bradley County, Tennessee. On December 10, 2008, after the filing of the involuntary petition but before the filing of the voluntary petition and the entry of the order for relief in the involuntary case, the debtor, on behalf of Cleveland Auto Mall, signed a Sale and

---

[1] Exit 20 Auto Mall, LLC, was originally named a defendant along with Mr. Bowers, but it was dismissed from the proceeding at the close of the plaintiff's evidence.

[2] By an order entered on March 14, 2013, the court severed the "value" issue, and the remaining issues were tried on March 17-18, 2014.

Purchase Agreement and a Warranty Deed for the sale of the real estate to a newly formed limited liability company called Exit 20 Auto Mall, LLC, whose members were Mr. Bowers, Steve Dillard, and DeWayne McCamish. The documents for the real estate transaction were drafted by the law firm of Grant, Konvalinka, & Harrison, P.C., which represented all parties in connection with the transaction.

The Sale and Purchase Agreement listed the purchase price for the real property as follows:

> (a) Assumption of all the existing debt with SunTrust Bank secured by the Property for approximately Three Million Eight Hundred Thousand Dollars ($3,800,000);

> (b) Assumption of the outstanding amounts due on the development of the road of approximately Two Hundred Fifty Thousand Dollars ($250,000); and

> (c) Assumption of the amounts due for the construction of the gas line on the Property of approximately One Hundred Eighty Seven Thousand Dollars ($187,000).

> (d) Assumption of all outstanding real estate taxes on the Property.

The agreement also provided that the seller's obligation to close was subject to the condition that the debtor's personal guaranty of the loan secured by the property be released. No other consideration for the transfer of the real estate was listed in the agreement.

On January 26, 2009, the debtor filed his bankruptcy schedules. In Schedule B – Personal Property, the debtor reported that he held interests in numerous business entities, one of which was an interest in Cleveland Auto Mall valued at $1,926,106. In an exhibit attached to his statement of Financial Affairs, the debtor reported that Cleveland Auto Mall was "closed."

On February 19, 2009, the plaintiff was appointed as chapter 11 trustee in the case, and, thereafter, the trustee was authorized to employ attorney F. Scott LeRoy, who has served as one

of the trustee's bankruptcy counsel throughout the case. Also in early 2009, the trustee was authorized to employ Thomas S. Kale, Jr., as a real estate consultant. Mr. LeRoy testified that, in early 2009, possibly in April, he learned about the December 2008 real estate transfer from Cleveland Auto Mall to Exit 20 Auto Mall from Mr. Kale, and that he had a conversation with Mr. Kale about the value of land that had been transferred. Mr. LeRoy also testified that the trustee would have been involved in those discussions.

In early 2010, the debtor's attorney, Richard Banks, complained to the trustee and his attorney about the trustee's inaction in pursuing avoidance actions against Mr. Bowers and others. On April 7, 2010, the debtor filed a chapter 11 plan and a disclosure statement which indicated that the estate possessed possible avoidance actions against Mr. Bowers and others.  It appears that the debtor's counsel believed that the estate had a viable avoidance claim against Mr. Bowers based on the real estate transfer from Cleveland Auto Mall to Exit 20 Auto Mall, and that that was one of the claims that the debtor's attorney had been urging the trustee to pursue. It also appears that the trustee was not convinced at that time that an avoidance action should be pursued, and that one of the issues apparently concerning the trustee was the difficulty of ascertaining the value of the transferred real estate.

On April 2, 2010, the debtor's attorney filed a motion to take an examination of Mr. Bowers pursuant to Rule 2004 of the Federal Rules of Bankruptcy Procedure. That motion was granted on April 12, 2010, and, according to the court record, the examination was thereafter scheduled for May 14, 2010.

On April 22, 2010, the debtor filed a motion seeking an order declaring that the trustee had abandoned, among other things, all fraudulent conveyance actions against Mr. Bowers and

asking the court to permit the debtor to pursue such claims. That motion was scheduled for hearing on May 20, 2010, and was later reset for hearing on May 25, 2010.

On April 28, 2010, the trustee filed a motion to convert the debtor's chapter 11 case to a chapter 7 case, and that motion was scheduled for hearing for June 3, 2010.

On May 14, 2010, Mr. Bowers failed to appear for the Rule 2004 examination scheduled for that date, apparently because of a scheduling conflict. Although Mr. Bowers, through his attorney, had offered to appear for the examination in early June 2010, that was not acceptable to counsel for the debtor and, on May 14, 2010, he filed a motion seeking an order of contempt against Mr. Bowers. Due to some problem relating to the service of the subpoena on Mr. Bowers, that motion was withdrawn on June 30, 2010, and no other attempt was made to reschedule Mr. Bowers's examination pursuant to the order of April 12, 2010.

In an email exchange between the debtor's attorney (Mr. Banks) and the trustee's attorney (Mr. LeRoy) on May 16, 2010, Mr. LeRoy stated, in pertinent part, that based on the trustee's investigation it appeared that Mr. Bowers had some exposure regarding the Cleveland Auto Mall property. When asked on cross-examination what investigation the trustee had conducted concerning the transfer of the property to Exit 20 Auto Mall, Mr. LeRoy testified that there had been discussions with a number of people, including the trustee, Mr. Kale, and the debtor's attorney, about whether there should be an attempt to set aside the transaction. Mr. LeRoy also testified that there would have been discussions with one or more representatives from the office of the United States trustee, and he testified generally that from time to time there were telephone conferences with attorneys for major creditors about potential causes of action and whether it would be beneficial to the estate to attempt to set aside certain transfers. When

asked if the trustee had sought any documents regarding the real estate transaction, Mr. LeRoy testified that the trustee had the Warranty Deed conveying the real estate, which was a matter of public record, and the documents contained in Cleveland Auto Mall's file, which would have included its operating agreement. Mr. LeRoy was asked if he had made any other inquiry of anyone as to any additional documents that might have related to the real estate transaction, and he responded that he did not recall the need for requesting more documents. It does not appear that the trustee obtained or was aware of the Sale and Purchase Agreement between Cleveland Auto Mall and Exit 20 Auto Mall until after the initiation of Adversary Proceeding No. 10-1407, which is discussed below.

On May 24, 2010, the debtor filed an amendment to his Schedule B stating, among other things, that the debtor possessed various causes of action against Mr. Bowers and others. On May 27, 2010, the court entered an order denying as withdrawn the debtor's motion seeking an order declaring that the trustee had abandoned certain causes of action including all fraudulent conveyance claims against Nelson Bowers.

On June 2, 2010, the trustee filed an application to employ Mr. Banks as special counsel for the possible pursuit on behalf of the estate of various causes of action that had been listed in the amendment to Schedule B. When asked on cross-examination why the trustee decided to hire Mr. Banks to pursue the avoidance of the real estate transaction between Cleveland Auto Mall and Exit 20 Auto Mall, Mr. LeRoy testified that he believed that a telephone call took place among the trustee, Mr. LeRoy, and attorneys for several major creditors to discuss that employment. He further testified that Mr. Banks provided new information about the real estate transaction that the trustee had not heard before, including information about the debtor's medical

condition at the time he signed the Warranty Deed and the circumstances surrounding the debtor's execution of the deed.

On June 14, 2010, the court entered an order granting the trustee's motion to convert the debtor's chapter 11 case to case under chapter 7. Mr. Still was thereafter appointed to serve as the chapter 7 trustee, and Mr. LeRoy continued to serve as counsel for the trustee. An order authorizing the employment of Mr. Banks as special counsel for the trustee was entered on July 1, 2010.

On August 5, 2010, the trustee filed a complaint initiating Adversary Proceeding No. 10-1407 against Mr. Bowers, Exit 20 Auto Mall, LLC, the Grant, Konvalinka & Harrison law firm, and CapitalMark Bank & Trust (the lienholder on the property at the time), seeking to avoid the transfer of the real estate from Cleveland Auto Mall to Exit 20 Auto Mall. That complaint was drafted by Mr. Banks as attorney for the trustee, and it was also signed by Mr. LeRoy as attorney for the trustee. Around the same time, Mr. Banks, on behalf of the debtor and the trustee, filed a complaint in the Chancery Court of Bradley County, Tennessee, against Mr. Bowers, Exit 20 Auto Mall, Grant, Konvalinka & Harrison, and attorney John Anderson. That complaint alleged various state-law causes of action arising out the same transaction that was the subject of Adversary Proceeding No. 10-1407.

On October 8, 2010, Jeffrey S. Norwood, counsel for Mr. Bowers and Exit 20 Auto Mall in Adversary Proceeding No. 10-1407, filed a motion to dismiss the complaint against his clients for failure to state a claim upon which relief could be granted. Two weeks later, CapitalMark filed a motion for judgment on the pleadings, and, five days after that, Grant, Konvalinka & Harrison filed a motion to dismiss the complaint.

On October 20, 2010, Mr. Norwood, as counsel for Mr Bowers, sent an email to Mr.

LeRoy, that stated it was in "follow up to our settlement discussions," which Mr. LeRoy had

initiated. The subject line of the email read: "McKenzie - Protected Settlement Communication

under Rule 408," and the email read, in pertinent part:

> Regarding the consideration given by Exit 20 Auto Mall, LLC for the 41 acres
> acquired on 12/10/2008, from Cleveland Auto Mall, LLC . . . , it consisted of the
> following:
>
>> 1. Assumption of existing debt of approximately $3.8 million owed to
>> SunTrust Bank;
>>
>> 2. Assumption of debt due on the development of access road of approxi-
>> mately $250,000;
>>
>> 3. Assumption of debt owed for construction of the gas line of approxi-
>> mately $187,000;
>>
>> 4. Assumption by purchaser of all real estate taxes;
>>
>> 5. Complete release by SunTrust of Toby McKenzie's guaranty of the
>> outstanding loan; and
>>
>> 6. Payment of $75,000 to Shasta Kaye McKenzie for the benefit of Cleve-
>> land Auto Mall. . . .
>
> It would be the contention of Nelson Bowers and Exit 20 Auto Mall, LLC that
> adequate consideration in the aggregate amount of at least $4,312,000 was pro-
> vided for the transfer of the subject property.

Along with the email, Mr. Norwood sent Mr. LeRoy a copy of the $75,000 check to Shasta

McKenzie (the debtor's daughter), which was drawn on the account of Steve Dillard and Anne

Dillard. The words "Cleveland Auto Mall" had been written on the check memo line. Based on

an email written by Mr. LeRoy dated February 2, 2011, it appears that Mr. Norwood also fur-

nished Mr. LeRoy with a copy of the Sale and Purchase Agreement evidencing the transfer of the

real estate, which the trustee had not obtained prior to the filing of the complaint. According to

Mr. Norwood, Mr. LeRoy intimated that he intended to amend the complaint in Adversary Proceeding No. 10-1407 based on the debtor's receipt of the check, but that was never done.

Prior to Mr. LeRoy receiving the email and check from Mr. Norwood, neither the trustee nor his attorneys knew about the $75,000 payment. Mr. LeRoy testified that he accepted the statements in Mr. Norwood's email as representing the attorney's understanding of the facts. He also testified that at some point he asked the debtor about the $75,000 check, and Mr. McKenzie said he did not remember receiving it.

In an email from Mr. Banks to Mr. LeRoy dated October 27, 2010, Mr. Banks stated that he was filing a motion to depose Steve and Anne Dillard about the $75,000 check because it had come from them. As Mr. LeRoy acknowledged, the email indicated that Mr. Banks was not relying on Mr. Norwood's October 20 email regarding the $75,000 check but was attempting to ascertain more information about the payment. The promised motion to conduct a Rule 2004 examination of the Dillards was filed on October 27, 2010, and granted the next day. The examination was not, however, conducted during the pendency of Adversary Proceeding No. 10-1407.

On November 8, 2010, Grant, Konvalinka & Harrison took a Rule 2004 examination of Shasta McKenzie. She testified that she had no knowledge of the $75,000 check until her father arrived at her house and told her he needed her assistance getting the check cashed; that she did not know what the check was for but assisted her father in getting the check cashed; that her father took $65,000 of the $75,000 in cash and told her to hold the remaining $10,000 in cash for him; and that she later gave the remaining $10,000 to the debtor in March 2009 at his request. Ms. McKenzie testified to the same effect at the trial of the present adversary proceeding.

On December 1, 2010, Grant, Konvalinka & Harrison took a Rule 2004 examination of the debtor. He testified that he received the proceeds of the $75,000 check from Mr. Bowers but he believed that the check represented the repayment of debt owed to the debtor. He dismissed the notion that the $75,000 payment was a "down payment to buy my acreage."

On or about December 9, 2010, Mr. Norwood sent Mr. LeRoy a redlined copy of a complaint objecting to the debtor's discharge that Mr. LeRoy had drafted. Mr. LeRoy had sent a draft of the complaint to Mr. Norwood and asked him to make any suggested edits. Mr. Norwood made minor, non-substantive edits to the complaint before returning it to Mr. LeRoy.

On December 10, 2010, the trustee filed a complaint objecting to the debtor's discharge. The complaint included averments pertaining to the debtor's receipt and concealment of the $75,000 check in connection with the transfer of the real estate from Cleveland Auto Mall to Exit 20 Auto Mall. It alleged that the existence of the check was not known by the trustee until approximately October 20, 2010, and that the debtor had never disclosed the existence of the check or cash to his two bankruptcy attorneys, the trustee, the trustee's accountants, or anyone else associated with the case.[3]

December 10, 2010, was also the date of expiration of the limitations period for the avoidance of a postpetition transfer taking place on December 10, 2008. *See* 11 U.S.C. § 549(d).

On December 16, 2010, the court held a hearing on the motions pending in Adversary Proceeding No. 10-1407. During the course of the hearing, the trustee's attorney, Mr. Banks, did not mention the $75,000 check or move for additional time to undertake discovery regarding the

---

[3] The complaint was subsequently dismissed after the court entered an order on February 24, 2011, approving the debtor's waiver of discharge.

check or otherwise with respect to the December 2008 transactions. At the conclusion of the

hearing, the court announced in an oral decision from the bench that the complaint would be

dismissed on the ground that it sought to avoid a transfer of property that was not property of the

debtor or his bankruptcy estate but was property of nondebtor Cleveland Auto Mall, LLC. Later

that same day, the court entered an order dismissing the complaint, and the plaintiff did not file a

notice of appeal of that order. The trustee did not take Mr. Bowers's or either Dillard's deposi-

tion before the dismissal of the proceeding.

On May 19, 2011, the trustee filed a motion to take a Rule 2004 examination of Mr.

Bowers, and the motion was granted the following day. The examination was subsequently

conducted on July 8, 2011. At that time, the law firm of Grant, Konvalinka, and Harrison, P.C.,

was attempting to obtain relief from the automatic stay in the debtor's bankruptcy case so that it

could pursue security interests in the debtor's ownership interests in a number of limited liability

companies. The debtor had pledged the interests to the firm in October 2008, before the filing of

the involuntary petition, to secure an attorney's fee obligation that the debtor owed the firm.

Among the pledged interests was the debtor's membership interest in Cleveland Auto Mall,

LLC. The trustee opposed the law firm's motion and challenged the validity of the pledge agree-

ments and the transfer of the security interests. Mr. Bowers's Rule 2004 examination was taken

in connection with that stay litigation.[4] During the examination, Mr. Bowers testified as follows

regarding the $75,000 check:

> Q    In your mind the $75,000 that was made payable to Shasta McKenzie was
>      for Steve A. McKenzie, correct?
>
> A    Correct.
>
> Q    And that was a payment to him for his agreement to allow Cleveland Auto
>      Mall, LLC to convey its property to Exit 20 Auto Mall, LLC?
>
> A    Yes, sir.
>
> . . . .
>
> Q    Okay. In the questioning and answering that's been done over the exhibits
>      that have been introduced, the Warranty Deed, the Sale and Purchase
>      Agreement and the check, there were a lot of things that you answered you
>      didn't remember or you didn't know. Is there anything that you can think
>      of that would refresh your recollection about the answers to the questions
>      I've given you?
>
> A    This particular check was for his interest in the LLC, not for the property.

The trustee's attorney, Mr. LeRoy, testified that this testimony was the first indication he re-

ceived from any source that the $75,000 check was given in exchange for the debtor's member-

ship interest in Cleveland Auto Mall, rather than for the real property as stated in attorney Nor-

wood's email of October 20, 2010. Also, the trustee testified that, prior to Mr. Bowers's Rule

---

[4] The Rule 2004 examination of Steve Dillard also took place on July 8, 2011, also in connection with the stay-relief litigation. Mr. Dillard testified that he had several conversations with Mr. Bowers about becoming an investor in the real property located at Exit 20 in Bradley County. He further testified that eventually Mr. Bowers told him that $75,000 was needed to put the deal together and that, following Mr. Bowers's instructions, he sent Mr. Bowers a $75,000 check made payable to Shasta McKenzie, which his wife dropped off at one of Mr. Bowers's car dealerships. (Mr. Dillard testified that, to complete the purchase of his interest in Exit 20 Auto Mall, LLC, he subsequently paid Mr. Bowers an additional $500,000.)

2004 examination on July 8, 2011, he had no knowledge that the debtor's membership interest

had been transferred in exchange for the check.

Mr. Bowers also testified regarding the $75,000 payment during a hearing on the law

firm's motion for stay relief conducted on October 24, 2011:

Q    Prior to the time that Mr. McKenzie allowed or signed the documents that
allowed Cleveland Auto Mall to convey its interest to Exit 20 Auto Mall, you and
he had some negotiations about what he wanted in order to [do] that, didn't you?

A    No negotiations. Just at one time he said he wanted X amount and then
came back and said -- I never -- there wasn't any discussion at that time.

Q    And do you remember what the X amount was?

A    It was $125,000.

Q    He wanted $125,000 for his interest in Cleveland Auto Mall?

A    For his interest in the entity, correct.

Q    And you ultimately decided on $75,000?

A    Right.

Q    And you agreed to pay him that $75,000, correct?

A    I agreed to get him the $75,000.

Q    All right. You didn't actually pay it, somebody else paid it --

A    You're correct.

Q    -- which was a member of the new Exit 20 Auto Mall?

A    Right.

. . . .

Q    Would you review that document, please?

A    I'm reviewing it. It says here the day of December 2008.

-13-

Q      What day?

A      December 10th.

Q      Does that refresh your recollection that that transaction took place in December of 2008?

A      It does.

Q      And that document you're looking at is a buy/sell agreement between Cleveland Auto Mall and Exit 20 Auto Mall?

A      That's what it says.

Q      All right. When did you inform anyone at the Grant Konvalinka & Harrison law firm that Mr. McKenzie was getting $75,000 for his interest in Cleveland Auto Mall?

A      I don't recall, but I would say prior to this.

On December 9, 2011, the court denied the law firm's motion for relief from the automatic stay.

On December 16, 2011, the trustee filed a motion for relief from the order dismissing Adversary Proceeding No. 10-1407, pursuant to Rule 9024 of the Federal Rules of Bankruptcy Procedure and Rule 60(b) of the Federal Rules of Civil Procedure. The trustee did not seek relief from the dismissal order because it was erroneous, but only so that he could file an amended complaint seeking to avoid a transfer of the debtor's membership interest in Cleveland Auto Mall, LLC. The court denied the motion on October 3, 2012. One of the issues addressed by the court in denying the motion concerned certain allegations set forth in the dismissed complaint. Those allegations were as follows:

22. On December 10, 2008 this fraudulent and avoidable transfer of McKenzie's equitable interest in the sixty (60) acres of Exit 20 property was prohibited by the automatic stay imposed as of November 20, 2008. . . .

. . . .

-14-

31. McKenzie's 50% share in Cleveland Auto Mall, LLC and that entity's sole asset of 60 acres of valuable land amount to "property of the Estate" as described under 11 U.S.C. § 541.

32. The property was transferred as defined under 11 U.S.C. 101(54)(D)[.]

In denying the trustee's motion, the court explained:

> When the court dismissed the complaint, the court made clear that it construed the complaint as seeking to avoid a transfer of real property made by a non-debtor entity. While Paragraphs 31 and 32 of the original complaint possibly could be read as seeking the avoidance of the transfer of the debtor's membership interest in Cleveland Auto Mall, LLC, the other allegations of the complaint made clear that the plaintiff was seeking to avoid the transfer of the real property by the limited liability company, and not the transfer of the debtor's membership interest in the LLC. As the court noted in an order entered in this proceeding on January 10, 2012, Paragraphs 31 and 32 appeared to represent "inartful drafting by confusing ownership of the LLC with ownership of the real property – a distinction upon which the court based its decision dismissing this proceeding." Moreover, the parties do not question the correctness of the dismissal order or the court's interpretation of the complaint. At the pretrial conference on August 1, 2012, the defendants' counsel apparently agreed that Paragraphs 31 and 32 represented inartful drafting and that the original complaint did not seek to avoid the transfer of the debtor's LLC interest. The plaintiff implicitly makes the same acknowledgment, since he contends that, through no fault of his own, he did not know about the transfer at the time the proceeding was dismissed.

The trustee filed the complaint initiating this adversary proceeding on August 28, 2012.

The complaint asserts that the debtor's equity interest was secretly transferred to Mr. Bowers on or about December 10, 2008, and that the transfer of the membership interest is avoidable under § 549 of the Bankruptcy Code. Because the limitations period set forth in § 549(d) for avoiding postpetition transfers expired in December 2010, the trustee relies on equitable tolling or equitable estoppel in arguing that he should not be barred from pursuing the avoidance claim.

On January 17, 2014, the defendants filed a motion for summary judgment. On February 21, 2014, the court denied the motion, determining that there were genuine issues of material fact regarding whether the debtor transferred his membership interest and whether equitable tolling

applies.[5] The court also rejected the defendants' argument that any transfer of the equity interest

was ineffective due to a lack of written consent by both members of the limited liability compa-

ny,[6] and also rejected (for the reasons stated in the court's oral ruling of October 3, 2012, quoted

in part above) their contention that this proceeding is barred by *res judicata* on account of the

dismissal of Adversary Proceeding No. 10-1407.

At trial, Mr. Bowers testified that in 2005 he and Mr. McKenzie formed Cleveland Auto

Mall, each holding 50% interests, and that the LLC immediately thereafter acquired the real es-

tate located near I-75 Exit 20 in Bradley County, Tennessee. The purchase of the real estate was

financed in part by a loan from SunTrust Bank, and both Mr. McKenzie and Mr. Bowers person-

ally guaranteed that loan. Some time in late 2007 or early 2008, SunTrust became uncomfortable

with the financial condition of one of Mr. McKenzie's entities that had a relationship with the

bank, and SunTrust wanted the Cleveland Auto Mall loan refinanced and Mr. McKenzie re-

moved from the loan. To accommodate the bank's concerns, Mr. Bowers began negotiating with

Mr. McKenzie in 2008 about "getting him out of Cleveland Auto Mall." Those discussions oc-

curred prior to the filing of the involuntary petition against Mr. McKenzie. Previously, Mr.

Bowers testified that Mr. McKenzie wanted $125,000 for his interest in Cleveland Auto Mall,

but at trial Mr. Bowers testified that Mr. McKenzie wanted $125,000 to "sign documents."

---

[5] The court made clear that, although equitable tolling may apply, equitable estoppel does not, "because the plaintiff contends that he was not aware of the causes of action – not that he was aware of the claims but that some conduct of the defendants prevented him from asserting them."

[6] The operating agreement of Cleveland Auto Mall, LLC, required the prior written consent to transfers of equity interests in the company. The order denying the motion for summary judgment held that, if there was a transfer, the contractual requirement would have been waived since both LLC members were parties to the transfer.

Previously, Mr. Bowers testified that the $75,000 payment ultimately agreed upon was paid to the debtor for his interest in Cleveland Auto Mall, LLC, but at trial Mr. Bowers testified that the $75,000 was paid to Mr. McKenzie "to sign documents" relating to Cleveland Auto Mall, namely the Sales and Purchase Agreement with respect to the real estate and the Warranty Deed transferring the property. When asked why he previously testified under oath that the $75,000 payment to the debtor was for his interest in Cleveland Auto Mall, Mr. Bowers attributed the prior testimony to confusion and a lack of legal training, and he asserted that he did not equate "interest" with "ownership."

## II.

The trustee seeks to avoid an alleged transfer by the debtor to the defendant pursuant to § 549 of the Bankruptcy Code. Specifically, the trustee seeks to avoid a transfer of the debtor's membership interest in Cleveland Auto Mall, LLC, which he alleges was made on or about December 10, 2008. Although the trustee filed his complaint after the expiration of the two-year limitations period prescribed by § 549(d) of the Code, he contends that equitable tolling should be applied to toll the running of the limitations period so that he can pursue the avoidance of the alleged transfer. The defendant argues that equitable tolling is not available to the trustee because the trustee cannot prove that he acted with diligence in pursuing his rights or, alternatively, that the trustee cannot prove that a transfer of the debtor's membership interest occurred.[7]

---

[7] The trustee takes the position that Mr. Bowers should have been precluded from opposing the application of equitable tolling at trial, because, "[a]lthough a party may plead in the alternative, it cannot proceed to trial on two fundamentally inconsistent theories if it has admitted facts which wholly negate one of those theories." *Official Comm. of Unsecured Creditors of Tousa, Inc. v. Citicorp N. Am., Inc. (In re Tousa, Inc.)*, 408 B.R. 913, 920 (Bankr. S.D. Fla. 2009); *see also Langer v. Monarch Life Ins. Co.*, 966 F.2d 786, 802-04 (3d Cir. 1992) (party

(continued...)

Thus, the court must determine whether the doctrine of equitable tolling is applicable under the facts of this case. "Strictly defined, equitable tolling is [t]he doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired." *Tapia-Martinez v. Gonzales*, 482 F.3d 417, 422 (6th Cir. 2007) (internal quotation mark omitted) (citation omitted). The burden of proof is on the party asserting the applicability of equitable tolling. *E.g.*, *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003). "The doctrine is used sparingly by federal courts. Typically, equitable tolling applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control. . . . Absent compelling equitable considerations, a court should not extend limitations by even a single day." *Id.* (citing and quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560 (6th Cir. 2000)) (internal quotation marks omitted). The reason equitable tolling is to be narrowly applied is that statutes of limitation are "vital to the welfare of society and are favored in the law." *Hill v. U.S. Dep't of Labor*, 65 F.3d 1331, 1336 (6th Cir. 1995) (quoting *Wood v. Carpenter*, 101 U.S. 135,

---

[7] (...continued)
may not pursue alternative theory if it has made formal admission of facts inconsistent with that theory). The trustee contends that to argue that there was no transfer of the membership interest is "fundamentally inconsistent" with an argument that the trustee should have discovered the transfer. However, Mr. Bowers has not admitted that a transfer was made. He argues that the trustee has the burden of proof on both issues and that he has not carried the burden of showing diligence in investigating whether a transfer was made, but that, if the court concludes that the trustee has met that burden, he has not carried the burden of proving that a transfer was made. The court does not believe the two approaches are inconsistent. Just as a defendant may "pursue third-party liability over claims while contesting the underlying claim," *Langer v. Monarch Life Ins. Co.*, 966 F.d at 802, Mr. Bowers may resist the application of equitable tolling while contesting that there was a transfer of the membership interest. In effect, without admitting that a transfer took place, Mr. Bowers argues that the evidence the trustee is relying on to support his theory that a transfer occurred is evidence that should have been sought through a diligent investigation before the limitations period expired.

139 (1879)). At some point "the right to be free of stale claims . . . comes to prevail over the right to prosecute them." *Id.* (quoting *Am. Pipe & Constr. Co. v. Utah*, 414 U.S. 538, 554 (1974)).

"Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way." *Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 (2012) (emphasis omitted) (internal quotation marks omitted) (quoting *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)). Such "extraordinary circumstances" may be present, for example, where the existence of the cause of action was concealed from the plaintiff. *E.g.*, *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir. 1975). "Three elements must be pleaded [and proved] in order to establish fraudulent concealment: (1) wrongful concealment of their actions by the defendants; (2) failure of the plaintiff to discover the operative facts that are the basis of his cause of action within the limitations period; and (3) plaintiff's due diligence until discovery of the facts." *Id.* (citing *Weinberger v. Retail Credit Co.*, 498 F.2d 552 (4th Cir. 1974)); *accord*, *e.g.*, *Jarrett v. Kassel*, 972 F.2d 1415, 1424 n.6 (6th Cir. 1992) (noting that federal law, unlike Tennessee law, requires "the showing of failure to discover the operative facts within the limitations period"). The Sixth Circuit has explained:

> The Supreme Court case of *Wood v. Carpenter*, *supra*, long ago established the standards for pleading fraudulent concealment. The Court said that an injured party has a positive duty to use diligence in discovering his cause of action within the limitations period. Any fact that should excite his suspicion is the same as actual knowledge of his entire claim. Indeed, "the means of knowledge are the same thing in effect as knowledge itself." If the plaintiff has delayed beyond the limitations period, he must fully plead the facts and circumstances surrounding his belated discovery "and the delay which has occurred must be shown to be consistent with the requisite diligence."

*Dayco*, 523 F.2d at 394 (quoting *Wood v. Carpenter*, 101 U.S. at 143). "[T]hose plaintiffs who delay unreasonably in investigating circumstances that should put them on notice will be fore-closed from filing, once the statute has run." *Campbell v. Upjohn Co.*, 676 F.2d 1122, 1128 (6th Cir. 1982); *accord, e.g.*, *Noble v. Chrysler Motors Corp.*, 32 F.3d 997, 1002 (6th Cir. 1994) (rejecting application of equitable tolling because "plaintiffs have failed to allege any facts that would exhibit their due diligence in discovering the basis for their claim"). In other words, once the plaintiff becomes aware of suspicious facts that may suggest a cause of action, he must dili-gently investigate to determine whether he does in fact have a cause of action and, if he does, assert the cause of action by filing a complaint within the limitations period. If the plaintiff can show that he diligently investigated but was nevertheless "delayed beyond the limitations peri-od," he must show the circumstances that prevented him from timely filing a complaint. If the plaintiff either failed diligently to investigate or does not show why he was unable to comply with the statute of limitations despite a diligent investigation, equitable tolling will not be avail-able.

A bankruptcy trustee has a statutory duty to "investigate the financial affairs of the debt-or" and "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest." 11 U.S.C. § 704(4), (1). "Included within a trustee's statutory obligations are the duty to examine the debtor's books and records, . . . and to investigate and litigate potential lawsuits that might be brought on behalf of the debtor. . . . The failure to perform these duties . . . nullifies the trustee's ability to invoke the doctrine of equitable tolling." *Ernst & Young v. Matsumoto (In re United Ins. Mgmt., Inc.)*, 14 F.3d 1380, 1386 (9th Cir. 1994). Here, the trustee's examination of the

debtor's books and records did not disclose a transfer of the debtor's membership interest in

Cleveland Auto Mall, LLC, because any such transfer was undocumented. *See Blixseth v.*

*Kirschner (In re Yellowstone Mountain Club, LLC)*, 436 B.R. 598, 651 (Bankr. D. Mont. 2010)

(when parties do not document transfers, "the facts forming the basis of the claim [are] con-

cealed"), *amended in part by* Bankr. No. 08-61570-11, Adv. No. 09-00014, 2010 WL 3504210

(Bankr. D. Mont. Sept. 7, 2010), *judgment amended by* Bankr. No. 08-61570-11, Adv. No. 09-

00014, 2012 WL 6043282 (Bankr. D. Mont. Dec. 5, 2012), *aff'd*, No. CV-12-83-BU-SEH, 2014

WL 1369363 (D. Mont. Apr. 7, 2014); *see also Bailey v. Glover*, 88 U.S. (21 Wall.) 342, 349

(1874) (holding that equitable tolling may apply when the defendant "conceal[ed] a fraud, or . . .

committ[ed] a fraud in a manner that it concealed itself"). Nevertheless, the burden is on the

trustee to prove that he acted with diligence in conducting an investigation of potential lawsuits,

especially where the facts and circumstances warrant an investigation into particular matters that

come to the trustee's attention.

The proof presented at the trial of this proceeding revealed that, in early 2009, the trustee

became aware of the postpetition transfer of the real estate from Cleveland Auto Mall, LLC, to

Exit 20 Auto Mall, LLC, that was brought about by the debtor. Then, in early 2010, there were

discussions among the trustee, the trustee's attorney, and the debtor's attorney about whether the

trustee should bring an action in an attempt to avoid that transfer, as well as others, even though

the transfer of the real estate appeared to be between two nondebtor parties. The debtor's attor-

ney even went so far as to file a motion seeking an order declaring that the trustee had aban-

doned that purported cause of action, among others, so that the debtor could pursue them. Al-

though the trustee, through Mr. LeRoy as general counsel and Mr. Banks as special counsel,

eventually initiated an adversary proceeding asserting the purported cause of action that Mr.

Banks had been urging the trustee to prosecute, it appears, based on the evidence at trial, that

little or no investigation was undertaken regarding the circumstances surrounding the sale of the

real property. The trustee did not take any Rule 2004 examinations and did not request any docu-

ments before filing his complaint. All that he knew about the particular circumstances surround-

ing the transaction appears to have come from Mr. Banks, who was reporting what he had been

told by the debtor. The court cannot say that the trustee would have learned of evidence of the

transfer of the debtor's membership interest in the entity that sold the real property had he con-

ducted an investigation into that sale. However, an examination of the members of the entity that

acquired the property (including the Dillards, who wrote the $75,000 check to Shasta McKenzie,

and Mr. Bowers) may well have produced information about the circumstances surrounding that

transaction, including the prior discussions among the parties that occurred before the filing of

the involuntary petition, the consideration paid for the real estate, the consideration paid for the

membership interests in Exit 20 Auto Mall, and the suspicious check that was paid directly to the

debtor. If the pre-bankruptcy discussions had come to light – wherein Mr. Bowers and Mr.

McKenzie had talked about a possible buyout of Mr. McKenzie's interest in Cleveland Auto

Mall and Mr. Dillard and Mr. Bowers had talked about Mr. Dillard becoming an investor in the

property with Mr. Bowers – it would have been quite logical to surmise that the direct payment

to Mr. McKenzie made after the involuntary petition was filed represented the consummation of

those discussions. Had the complaint initiating Adversary Proceeding No. 10-1407 alleged that

the direct payment to Mr. McKenzie was, in effect, a purchase of his equity interest in Cleveland

Auto Mall, that complaint would have survived the motions to dismiss. The complaint, however,

made no such allegation. Moreover, the trustee's attorney did not mention the Norwood email or the $75,000 check at the hearing on dismissal of that proceeding, nor did the trustee ever file a motion for leave to amend the complaint or for additional time to conduct discovery.

While it may be debatable whether, standing alone, the trustee's lack of discovery prior to the initiation of Adversary Proceeding No. 10-1407 precludes the application of equitable tolling, what is clear is that the October 2010 email from Mr. Bowers's attorney to the trustee's attorney signaled or should have signaled to the trustee that an investigation was imperative. The "red flags" represented by the email and the copy of the $75,000 check certainly should have awakened the trustee to the need to scrutinize the December 2008 transactions prior to the expiration of the limitations period.

The email stated the attorney's contention that the check was delivered to Shasta McKenzie "for the benefit of Cleveland Auto Mall" and therefore served as part of the consideration "for the transfer of the subject property." But, taken literally, the statement could not have been true: the check could not have been given as part of the consideration for the real property because the consideration for an asset being sold goes to the seller, not one of the seller's two owners. Moreover, the payment was not included in the list of consideration recited in the Sale and Purchase Agreement, and the payment was made even more suspicious by the circuitous manner in which it was made to the debtor because the payment was made by a check issued by the Dillards (not the buyer of the real estate, Exit 20 Auto Mall, or even Mr. Bowers) and made payable to Shasta McKenzie (not Cleveland Auto Mall, or even the debtor). At this point, the obvious question for investigation is what the $75,000 was really given for. Given the lack of documentation in that regard, the question could only be answered by parties to the check or

perhaps parties to the related real estate transaction, namely the Dillards, Shasta McKenzie, the

debtor, or Nelson Bowers whose attorney first made the trustee aware of the check. If the trustee

had inquired of those individuals, his cause of action might have been revealed to him. Yet the

trustee did not take an examination of Mr. Dillard or Mr. Bowers until nearly nine months later

in July 2011,[8] and he has not offered an adequate explanation for that delay.

      Counsel for the trustee argued at trial that the delay was of no consequence because a

Rule 2004 examination of Mr. Bowers would not have provided the information that the trustee

learned later from the testimony of Mr. Bowers regarding the purpose of the $75,000 check.

However, the trustee and his attorneys could not have known at the time how Mr. Bowers would

testify or what information he might have revealed about his negotiations with the debtor. Be-

cause the trustee has the burden of proof on the diligence question, the court simply cannot con-

clude that he has shown that he acted diligently in conducting an investigation after the receipt of

the October email that revealed the secret $75,000 payment to the debtor. There may be facts and

circumstances showing there was insufficient time to take an examination of Mr. Bowers before

the expiration of the limitations period or the dismissal of the pending adversary proceeding, but

the trustee has not carried his burden of showing such facts and circumstances.

---

[8] Grant, Konvalinka & Harrison did examine Shasta McKenzie on November 8, 2010, but she did not know the purpose of the $75,000 check. She did testify, however, that her father, the debtor, received the proceeds of the check. The law firm also examined the debtor himself on December 1, 2010, but he falsely testified that the check was given in repayment of a debt, which was doubtful because the debtor had told Mr. LeRoy that he did not remember receiving the payment at all. Additionally, the testimony was inconsistent with the Norwood email's con-tention that the payment was part of the consideration for the real property. Thus, the debtor's testimony raised more questions than it answered.

The trustee also takes the position that no investigation was warranted because his attorneys were justified in relying on Mr. Norwood's contention that the $75,000 check was part of the consideration for the real property. Again, however, that contention was contradicted by the fact that the payment was not made by the buyer to the seller of the property and was not mentioned in the listing of consideration for the real estate set forth in the Sale and Purchase Agreement. Hence, the representations made in Mr. Norwood's email during the course of settlement negotiations regarding the $75,000 check were "red flags," warranting scrutiny, not facts upon which the trustee and his attorneys could simply rely. *See, e.g., Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.*, 332 F.3d 976, 981 (6th Cir. 2003) (noting the inherent questionability of statements made during settlement negotiations). Indeed, a week after the Norwood email, one of the trustee's attorneys, Mr. Banks, sent his co-counsel, Mr. LeRoy, an email that indicated that Mr. Banks was not relying on the Norwood email regarding the $75,000 check but was attempting to ascertain more information about the payment. The Norwood email (with the accompanying copy of the $75,000 check) did not excuse the trustee from investigating but, to the contrary, was a mandate for an investigation.

The trustee had the burden of showing such "compelling equitable considerations" that the "right to be free of stale claims" embodied by the statute of limitations must give way to the right to prosecute the claims. The trustee must have shown not only wrongful concealment or other "extraordinary circumstances" that stood in the way of asserting his claim in a timely manner, but also that he pursued his rights diligently. While the trustee's and his attorneys' diligence prior to the October 2010 email from Mr. Bowers's attorney is questionable at best, what the

court cannot conclude is that the trustee carried his burden of proving diligence once he received

evidence of the secret $75,000 payment to the debtor.

### III.

Because the court concludes that the trustee has failed to carry his burden of showing that

the statute of limitations was tolled until he filed his complaint eighteen months after the expira-

tion of the period prescribed by 11 U.S.C. § 549(d), the court will enter judgment for the defend-

ant, dismissing the complaint as barred by the applicable statute of limitations.

# # #